IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SHERRIE N. PORTER,

            Plaintiff,

v.                                                   CIVIL ACTION NO.   3:21-0464

FIRST BANKSHARES, INC.,
PHILLIP VALLANDINGHAM,
P. ANDREW VALLANDINGHAM,
SAMUEL VALLANDINGHAM,
JEANNE P. VALLANDINGHAM,
STEPHANIE V. MAYBERRY,
ROBERT JACKSON DILLEY,
DANIEL T. YON,
RONALD W. WOODELL,
MICHAEL S. LUNSFORD,
as Directors of either or both First Bankshares, Inc. and
The First State Bank of Barboursville,
ANY AND ALL OTHER UNNAMED AND TO BE
DETERMINED DIRECTORS THEREOF,
GUYAN HOLDING COMPANY, and
FIRST BANKSHARES TRUST PREFERRED I,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 20, 2022, the Court entered a Memorandum Opinion and Order that denied Plaintiff Sherrie N. Porter's Motion to Remand and granted, in part, and held in abeyance, in part, Motions to Dismiss by Defendants Phillip Vallandingham, P. Andrew Vallandingham, Samuel Vallendingham, Jeanne P. Vallendingham, Stephanie V. Mayberry, Robert Jackson Dilley, Daniel T. Yon, Ronald W. Woodell, and Michael S. Lunsford (ECF No. 7) and by First Bankshares, Inc., Guyan Holding Company, and First Bankshares Trust Preferred I. ECF No. 9. *Porter v. First Bankshares, Inc.*, No. 3:21-0464, 2022 WL 1179412 (S.D. W. Va. Apr. 20, 2022).

Having reviewed supplemental briefing on the remaining issue and upon considering uncontested facts outside the pleadings,[1] the Court **GRANTS** summary judgment in favor of Defendants on Plaintiff's remaining claim.

## I.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

---

[1] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 873 (4th Cir. 2020) (stating "[a] proper Rule 12(d) conversion first requires that all parties be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment" (internal quotation marks and citation omitted)).

## II.
## DISCUSSION

Generally speaking, Plaintiff alleges in her Complaint that Defendants[2] breached their fiduciary duties, were negligent, and acted with nonfeasance, misfeasance, and malfeasance that proximately caused The First State Bank (First State) stock held in her retirement portfolio to become worthless. In addition, Plaintiff claims that Defendants wrongfully ignored or denied her requests "to withdraw or transfer her retirement assets" made "[d]uring the latter few years of [her] employment." *Compl.*, ¶¶11, 12. As to Plaintiff's claims that Defendants breached their fiduciary duties and acted with negligence, nonfeasance, misfeasance, and malfeasance, which resulted in the depreciation of the value of company stock, the Court held those claims were preempted under the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and could not proceed. *Porter,* 2022 WL 1179412, at *5-6. Therefore, those claims were dismissed. *Id*. at 6.

However, as to Plaintiff's allegation that Defendants wrongfully ignored or denied her requests to withdraw or transfer the funds in her retirement account, the Court found resolution of that claim centered on applying the terms of the KSOP Plan to evidence that was outside the pleadings. In particular, the operation of the relevant Plan language hinged on Plaintiff's age at the time she ended her employment with First State. As Plaintiff did not address the issue, the Court found it was inappropriate to consider the matter "without converting the motion to one for summary judgment and giving Plaintiff advance notice." *Id*. at *4 (citations omitted). Therefore, the Court held that portion of Defendants' motions in abeyance and directed the parties to file additional briefing.

---

[2] As mentioned in this Court's earlier Memorandum Opinion and Order, Plaintiff did not make any specific claims against either Guyan Holding, LLC or First Bankshares Trust Preferred I. *Id*. at *2.

In response to the Court's directions, Plaintiff states she was 53 years old when she ended her employment with First State on December 1, 2017. As relevant here, the Summary Plan Description provides that a participant can diversify company stock held in a retirement account once the participant reaches age 55 and has at least ten years of Credited Services. Specifically, the Summary Plan Description states:

> ### *May I Diversify My Account?*
>
> Ordinarily, the KSOP Trustees will use Company contributions to purchase Company Stock. However, once you have attained age 55 and have completed ten years of Credited Service under the Plan, you may elect to diversify a certain percentage of your account balances that are invested in Company Stock. See your Plan representative for further details.

*Summ. Plan Description*, at 15, ECF No. 7-2.[3]

In this case, the parties do not dispute that Plaintiff met the requisite number of years of Credited Service. However, as Plaintiff alleges in her Complaint that she asked to withdraw and transfer her retirement assets *while* she was still employed at First State, she was ineligible to do so as it is undisputed she had not yet attained age 55 before she ended her employment. Therefore, the Court agrees with Defendants that Plaintiff cannot proceed with her claim that the requests she made *before* she left her employment were wrongly denied or ignored, as she did not meet the requirements to diversify her account under the clear and plain language of

---

[3]*See also First Bankshares, Inc. Employee Stock Ownership Plan (with 401(k) Provisions)*, Art. IV Contribution and Allocation, "Directed Investment Account" § 4.13(e)(1), at 64, ECF No. 7-1 (defining a "Qualified Participant" as "any Employee who has completed ten (10) whole year Periods of Service as a Participant and has attained age 55"); *id.* at § 4.13(a)-(f) at 62-65 (describing the procedures for "Qualified Participants" to direct their individual accounts).

the Plan.[4] In her Sur-Response, Plaintiff seems to suggest that there also was some error in distributing the company stock held in her retirement portfolio after she left her employment. Initially, the Court finds such a claim is not clear from the Complaint. However, even if the Complaint could be construed to make such a claim, the Court finds it cannot survive under the Plan's distribution procedures and the uncontested facts.

In her Sur-Response, Plaintiff claims Defendant Dilley advised her in June or July 2017 that she could not withdraw her funds until she "retired." Therefore, she "decided to retire" on December 1, 2017. *Pl.'s Sur-Resp.*, at 1, ECF No. 24.; *Aff. of Pl.*, at ¶¶3-5, ECF No. 24. Merely because Plaintiff considered herself "retired" in layperson's terms, however, is not the same as being qualified as a "Retired Participant" under the Plan. To be a "Retired Participant," the Plan requires there be an entitlement to retirement benefits. *First Bankshares, Inc. Employee Stock Ownership Plan (with 401(k) Provisions)*, Art. I Definitions §1.64, at 16. For "Early Retirement," the Plan provides a Participant or Former Participant must be at least 55 years old with seven years of service. *Id.* §1.16, at 5. As Plaintiff was 53 and did not qualify for early retirement, Plaintiff was considered a "Terminated Participant" under the Plan, that is, "a person who has been a Participant, but whose employment has been terminated other than by death, Total and Permanent Disability or retirement." *Id.* §1.67, at 16.

A few days after she stopped working, Defendant Dilley sent Plaintiff a letter dated December 5, 2017, stating he would be working on determining her options under the Plan. *Ltr.*

---

[4] The Plan does allow for advance distributions in the event of certain specified "hardships." *First Bankshares, Inc. Employee Stock Ownership Plan (with 401(k) Provisions)*, Art. VII Determination and Distribution of Benefits, "Advance Distribution for Hardship" § 7.12, at 84-86. However, distribution for hardship is not at issue in this case.

*from Jack Dilley to Sherrie N. Porter* (Dec. 5, 2017), ECF No. 24, at 6. On January 8, 2018, Defendant Dilley wrote Plaintiff a second letter setting forth the Plan's "distribution of benefits upon termination of a participant." *Ltr. from Jack Dilley to Sherrie N. Porter*, at 1 (Jan. 8, 2018), ECF No. 24, at 7. In that letter, Defendant Dilley advised Plaintiff that the 2017 accounting was not complete but, as of December 31, 2016, she had $51,655.76 in company stock and $2,604.61 in non-company stock. He also quoted Section 7.5 of the Plan, which describes how benefits are distributed "upon termination of a participant," and he stated she should "assume that [her] stock assets will be distributed in cash over a period of five years beginning with the first annual installment in December 2018." *Id*. at 1-2. He also expressly mentioned that [t]he value of the stock may be positively, negatively, or neutrally affected by future valuations." *Id*. at 2.

Three days later, Plaintiff signed a form acknowledging a five-year distribution period of company stock, "represented by selling each year 20% of the number of whole shares [she] owned at the time of [her] . . . termination" and acknowledging "that plan earnings or losses may affect the total cash [she] receive[s]." *Retiree Election of Form & Timing of Distribution*, ECF No. 24, at 9.[5] Plaintiff also marked that she elected to sell her shares "*at the option price in effect at the time of distribution*." *Id*. (italics added). Unfortunately, the value of company stock for the years 2018 and 2019 was $0.00. *Ltr. from Jack Dilley to Plan Participants*, at 1 (June 10, 2020), ECF No. 1-1, at 13 (stating "the value of First Bankshares, Inc. stock at the end of 2018 and 2019 as determined by a professional appraiser was $0.00"). Plaintiff states in her Sur-Response that she did not receive a distribution until July 28, 2020, when she received $31.05. Plaintiff seems to imply that it evidences a failure of Defendants to timely sell and distribute her shares. However,

---

[5]Plaintiff also elected to have her non-company stock rolled into a tax-qualified plan, which does not appear to be at issue in this case.

there was nothing to distribute in 2018 and 2019 because the stock had no value, and by June of 2020, the Plan was being terminated due to First State's failure. *See id*. Thus, to the extent Plaintiff alludes to some wrongful distribution after she terminated her employment, the Court finds it is not a claim clearly alleged in the Complaint and it is belied by the fact the stock was worthless when Plaintiff was entitled to her first distribution on December 1, 2018.

### III.
### CONCLUSION

Accordingly, for the following reasons, the Court **FINDS** Defendants are entitled to judgment as a matter of law on Plaintiff's remaining claim that Defendants wrongfully ignored or denied her requests to withdraw or transfer the funds in her retirement account. Therefore, the Court **GRANTS** summary judgment in Defendants' favor.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 7, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE